UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**D'ANNA WELSH**,

    Plaintiff,

v.                                          2:22-cv-216-JLB-NPM

**WILLIAM V. MARTINEZ, JR.** and
**KELLY MARTINEZ**,

    Defendants.

## ORDER

In this fraudulent-transfer action, plaintiff D'Anna Welsh seeks sanctions against the defendants, William Martinez ("Dr. Martinez") and his wife, Kelly Martinez ("Mrs. Martinez"). Welsh argues they defied both the rules of discovery and our previous discovery order and that Dr. Martinez spoliated evidence. A review of the events leading to the motion helps set the stage.

Early in the case, Welsh served the defendants with requests for production. They sought various communications, including communications between the defendants. But they were tailored to only "unprivileged communications." For instance, Welsh sought from Dr. Martinez:

> All unprivileged communications with [Mrs. Martinez] regarding Plaintiff.
>
> All unprivileged communications with [Mrs. Martinez] regarding transfers of money.

> All unprivileged communications with [Mrs. Martinez] regarding payment of liabilities titled solely in [Mrs. Martinez's] name.

(Doc. 86-1 at 14-15).[1] The discovery requests to Mrs. Martinez were more of the same. (Doc. 86-1 at 26). Defendants failed to respond to the discovery timely and sought a protective order instead. (Doc. 54). Welsh moved to compel responses. (Doc. 61).

We granted Welsh's motion to compel. (Doc. 74). Specifically, we ordered:

> By December 9, 2022, William and Kelly Martinez … will produce all responsive, non-privileged documents and a privilege log for any responsive documents withheld from production[.] (Doc. 74 at 6).

In response, Dr. and Mrs. Martinez said they had no documents responsive to the requests for unprivileged communications between them. (Doc. 86-1 at 40, 45-46). Since the requests only sought unprivileged communications, they did not assert any privilege or provide a privilege log.

Fast-forward to Mrs. Martinez's deposition on January 26, 2023. Welsh's counsel questioned Mrs. Martinez about her communications with Dr. Martinez. Welsh's counsel also asked Mrs. Martinez to search her phone for certain text messages with Dr. Martinez.[2] The search revealed several messages between Dr. and Mrs. Martinez discussing this lawsuit. (Doc. 86-1 at 48-57). At the

---

[1] At an evidentiary hearing, Welsh conceded that the crux of her motion concerned the communications between Dr. and Mrs. Martinez.

[2] It does not appear that Dr. Martinez was present at Mrs. Martinez's deposition.

deposition's conclusion, Mrs. Martinez agreed to search her emails using the search words discussed during the deposition and to reconvene for a follow-up deposition. (Doc. 86-1 at 318, 325-326). During the subsequent deposition, Mrs. Martinez explained that the emails she found were attorney-client communications, and she further testified that she also searched her desktop computer using the same methodology and did not find anything about the plaintiff or this action. (Doc. 86-1 at 611-624).

Dr. Martinez likewise answered questions about his communications with Mrs. Martinez during his January 30, 2023 deposition. He testified that he had routinely deleted his emails and texts with family members since February 2022. (Doc. 86-1 at 542-553). His employees had access to the messages on his phone, so he adopted this practice to preserve some privacy. (Doc. 86-1 at 542-43, 544-45). Dr. Martinez acknowledged that this included deleting text messages with Mrs. Martinez about Welsh or money transfers. (Doc. 86-1 at 547-548).

Welsh argues that Dr. Martinez's deletion of these communications constitutes spoliation. She also contends that the defendants' failure to produce spousal communications violated the discovery order and the applicable rules. As sanctions, she asks us to:

(1)  find that the intent elements of counts I and II of her complaint are established;

  (2)  preclude defendants from submitting evidence in opposition to counts I and II;

  (3)  strike all of defendants' affirmative defenses; and

  (4)  order defendants to pay Welsh's reasonable expenses, including attorney's fees, caused by their conduct. (Doc. 86)

There is no dispute that communications between Dr. and Mrs. Martinez pertinent to this case exist. Mrs. Martinez volunteered some of them during her deposition. (Doc. 86-1 at 48-57). But there is an underlying problem with Welsh's argument: communications between Dr. and Mrs. Martinez are protected by Florida's husband-wife privilege.[3] Subject to only three narrow exceptions,[4] a spouse can refuse to disclose confidential communications between the spouses made during the marital relationship. *See* Fla. Stat. § 90.504. Spousal communications are presumed to be confidential,[5] and none of the three statutory

---

[3] Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Thus, Florida's husband-wife privilege applies. *See also Hill v. State Farm Mut. Auto. Ins. Co.*, No. 3:13-cv-304-J-39MCR, 2014 WL 12621225, *1 (M.D. Fla. Nov. 25, 2014).

[4] Courts cannot create additional exceptions beyond those explicitly provided in the statute. *See Hanger Orthopedic Grp., Inc. v. McMurray*, 181 F.R.D. 525, 529 (M.D. Fla. 1998) (collecting cases). Thus, unlike federal law, there is no crime-fraud exception to Florida's husband-wife privilege. *Id.* ("Florida does not recognize an exception to the husband-wife privilege for communications made in furtherance of a crime."); *Johnson v. State*, 451 So. 2d 1024, 1024 (Fla. 1st DCA 1984) (explaining § 90.504 "does not except from the husband-wife privilege confidential communications between husband and wife made in furtherance of a crime").

[5] Through supplemental briefing, Welsh argues these communications were never intended to remain confidential—because they pertain to business matters—and, thus, were not privileged. (Doc. 125 § IV). We are unconvinced.

exceptions to the privilege apply here. *Id.* § 90.504(3); *Hanger Orthopedic Grp., Inc. v. McMurray*, 181 F.R.D. 525, 530 (M.D. Fla. 1998) (applying Florida law).

What's more, because Welsh's discovery requests explicitly sought only *unprivileged* communications, the communications between Dr. and Mrs. Martinez were not responsive. Thus, no privilege needed to be asserted, nor a privilege log produced. Likewise, our discovery order compelled the defendants to produce only *responsive* communications. Thus, the absence of spousal communications from the defendants' document production did not violate any discovery rule or the order.

To avoid the unintended consequences of how the discovery requests were phrased, Welsh asks us to impose a purported privilege waiver retroactively. She points to Mrs. Martinez's voluntary disclosure of some messages during her deposition and both defendants' willingness to answer questions about the spousal communications, and then she posits that the spousal-communication privilege was waived. This waiver, the argument goes, makes the spousal communications responsive to the discovery requests, thereby rendering the failure to produce them sanctionable. But even if the defendants waived the privilege, this does not bolster Welsh's argument. Any potential waiver occurred during the January depositions, which took place *after* the defendants had provided their discovery responses. So, they adequately responded to Welsh's document requests and complied with the discovery order.

Welsh also argues that sanctions are warranted for Dr. Martinez's spoliation. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009). Dr. Martinez admitted to intentionally deleting emails and text messages, including communications with Mrs. Martinez about Welsh and money transfers. But this alone is insufficient; Welsh must satisfy Rule 37(e). This rule provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the ligation may:
>   (A) presume that the lost information was unfavorable to the party;
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>   (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).[6] Welsh fails to satisfy this standard.[7]

---

[6] In 2015, the present form of Rule 37(e) was adopted "to foreclose[] reliance on inherent authority or state law to determine when certain measures should be used" when lost electronically stored information should have been preserved. FED. R. CIV. P. 37(e) advisory committee note to 2015 amendment.

[7] "In a diversity action such as the instant case, federal law governs the imposition of spoliation sanctions." *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010) (citing *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005)).

Dissecting the rule line-by-line, the first hurdle is whether Dr. Martinez's electronic communications with Mrs. Martinez "should have been preserved." The rule contemplates a litigant's duty to preserve relevant evidence "in anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). This is consistent with the common-law rule. *See*, *e.g.*, *Point Blank Sols., Inc. v. Toyobo Am., Inc.*, No. 09-61166-CIV, 2011 WL 1456029, *24 (S.D. Fla. Apr. 5, 2011) ("It is well-settled that the duty to preserve potentially relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable."); *see also* FED. R. CIV. P. 37(e) advisory committee notes to 2015 amendments (explaining the rule is "based on this common-law duty" and "does not attempt to create a new duty to preserve").

Dr. Martinez testified that ever since February 2022, he has habitually deleted emails and texts with family. This case was filed two months later in April 2022. He has been "in the conduct of litigation," and obligated to preserve evidence since then.[8] And while the communications are privileged, "the duty to preserve relevant evidence extends to privileged documents since privileges can be waived intentionally or inadvertently." *Taylor v. Mitre Corp.*, No. 1:11-cv-01247 LO/IDD, 2012 WL 5473715, *6 (E.D. Va. Sept. 10, 2012), *report and recommendation*

---

[8] Dr. Martinez was likely "in the conduct of litigation" much earlier considering he is also a defendant in a separate lawsuit brought by Welsh in May 2021. *See Welsh v. Martinez*, 2:21-cv-396-JLB-NPM.

7

*adopted*, 2012 WL 5473573 (Nov. 8, 2012). The communications should have been preserved.

But the electronically stored information must also be "lost" because of Dr. Martinez's failure to preserve it, and it must also be shown that the ESI "cannot be restored or replaced through additional discovery." While the communications were erased from Dr. Martinez's phone, Welsh has not shown that they are lost. "Because electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere." FED. R. CIV. P. 37(e) advisory committee notes to 2015 amendments. And fatal to her argument, Welsh demonstrated during Mrs. Martinez's deposition that the communications were still on Mrs. Martinez's phone. They could also be stored in archive files on other devices or in "the cloud." Thus, we cannot find that the communications at issue are lost.

The rest of the rule provides two prongs for potential relief. Under Rule 37(e)(1), Welsh must demonstrate that she is prejudiced from the loss of the messages. Offering little more than speculation about their content, she fails to carry this burden. Moreover, the communications would apparently do little, if anything, to tip the evidentiary scales in Welsh's direction. *See* FED. R. CIV. P. 37(e)(1) advisory committee notes to 2015 amendments ("An evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's

importance in the litigation."). In fact, Welsh's counsel boasts that even without the communications, Welsh can demonstrate eleven of the twelve badges of fraud. So, any additional information in the spousal communications would likely be cumulative or superfluous.

On the other hand, Rule 37(e)(2) does not turn on prejudice and depends instead on an intent to deprive one's opponent of the information. "The 'intent to deprive another party of the information's use in the litigation' is the equivalent of bad faith in other spoliation contexts." *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.*, 75 F.4th 1290, 1312 (11th Cir. 2023) (quoting Fed. R. Civ. P. 37(e)(2)). "In this Circuit's spoliation precedents, bad faith generally means destruction of evidence for the purpose of hiding adverse evidence." *Id.* (cleaned up). Thus, "the phrase 'intent to deprive' naturally requires that the spoliator has a purpose of hiding adverse evidence from other parties." *Id.* (cleaned up).

While Dr. Martinez intentionally deleted the messages, the record does not compel a finding of "bad faith." Again, Welsh offers mere conjecture to suggest that his practice of deleting the messages was motivated by a conscious choice to hide them from Welsh. But if that were the case, it seems he would have taken steps to remove them from Mrs. Martinez's phone as well, and the record dispels any such notion. Moreover, we gave Welsh an opportunity to examine Dr. Martinez about

this, but she declined. Thus, Welsh fails to carry her burden to show an "intent to deprive" or bad faith.

In sum, the defendants adequately responded to Welsh's discovery requests and complied with our discovery order. And with no adequate showing of loss, prejudice, or bad faith, Welsh is not entitled to any sanctions for spoliation. Accordingly, Welsh's motion for sanctions (Doc. 86) is **DENIED**.

**ORDERED** on April 11, 2025

_____
NICHOLAS P. MIZELL
United States Magistrate Judge