UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | | |
|---|---|---|
| D'ANNA WELSH, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:22-cv-00216-KCD-NPM |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM V. MARTINEZ, JR., and | ) | |
| KELLY MARTINEZ f/k/a KELLY | ) | |
| ROUSSEAU, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S TRIAL BRIEF

Plaintiff D'Anna Welsh respectfully submits this Trial Brief in advance of the upcoming bench trial before the Honorable Kyle C. Dudek.

## INTRODUCTION

Welsh intends to focus the trial on specific factual questions identified by the Court in its March 9, 2026 summary judgment order (ECF No. 163). Welsh believes the evidence, much of which will be stipulated, demonstrates hornbook fraudulent transfers that match the noncompliant conduct of Defendant Dr. William V. Martinez over the past 14 years since he became a judgment debtor in 2012, a contemnor in 2017, and a fugitive in 2020. Dr. Martinez has received, and transferred away, millions of dollars of income as a surgeon, and depleted the entirety of his $1.5 million in retirement account funds, transferring that money into the coffers and balance sheet of his co-

defendant insider wife, Kelly Martinez f/k/a Rousseau. Not only does Dr. Martinez owe a $2.36 million judgment to Welsh dating back to 2012, the balance on which is closer to $3 million, for violating her dignity by installing spy cameras in her bedroom and shower, putting spyware on her computer, and attaching a GPS tracker to her car, Dr. Martinez shrugs his shoulders at the court as he flouts court orders even when faced with arrest for violating a succession of contempt orders.

In 2017, Dr. Martinez was held in contempt for violating the 2012 Asset Standstill Order pursuant to Plaintiff's *Motion to Prevent Defendant's Fraudulent Transfer of Property*. That motion was granted and the Connecticut Court of Appeals affirmed the trial court's findings on facts similar to the case at bar. Between 2012 and 2016, Dr. Martinez transferred more than $2 million in wage income to his now ex-wife with the intent to place it out of Welsh's reach, just as he is doing now with his current wife and co-defendant in this action. The Connecticut Appellate Court held as follows:

> [The defendant] [Dr. Martinez] engaged in such conduct knowingly, with full knowledge of the asset standstill order, and for the *870 express purpose of placing the entirety of such funds outside the reach of the plaintiff (i.e., with the intention of depriving the plaintiff of significant statutory postjudgment procedures authorized by chapter 906 of the General Statutes). The court therefore finds [the defendant] in civil contempt." (Emphasis in original.)

*Welsh v. Martinez,* 191 Conn. App. 862, 869-70 (2019).

2

> We further conclude that the court's determination that the defendant wilfully violated the asset standstill order is supported by the evidence in the record before us."

*Id.* at 874.

> The contemptuous conduct in this case involves a deliberate attempt on the part of the defendant to thwart the plaintiff's ability to utilize statutory collection procedures by depositing the entirety of his wages into the account of a third party in contravention **731 of the asset standstill order over the course of several years."

*Id.* at 878.

Although the wife and geography are different, Dr. Martinez's modus operandi is unchanged. We believe the evidence will show hornbook fraudulent transfers, reflecting virtually all the badges of fraud, replete with with pretextual explanations by the Defendants. Amid a series of contempt orders in Connecticut which culminated with the issuance of a capias for Dr. Martinez's arrest on December 23, 2020, Dr. Martinez proclaimed that he was "unemployed" as he shuffled six-figure chunks of money to the co-defendant.

While a fugitive, while still in contempt, Dr. Martinez saw fit to flout his monthly contempt sanction payments to pre-pay a $380,000 chunk of his wife's mortgage on which he was not even obligated. Ms. Martinez pretended that "gift" did not really mean "*gift*," despite a signed "gift letter" amid her sworn loan materials. Defendants struggled to explain how depleting $380,000 in capital supposedly to save $1,600 per month on a lower payment would make

3

a shred of sense, given that it would take 20 years to break even on straight monetary terms, let alone when considering the time value of money. Herein, and with more specificity in forthcoming filings, Welsh will itemize the transactions, the evidence, the claims, the damages, and the prayers for relief.

It has been said that "[n]othing so quickly undermines society as a failure to enforce its laws." Charles Evans Hughes, quoted in ADDRESSES OF CHARLES EVANS HUGHES , 1906–1916 247 (2d ed. 1916); see also *Degen v. United States*, 517 U.S. 820, 828 (1996) (noting that the "dignity of a court derives from the respect accorded its judgments"). Dr. Martinez's feigning of ignorance is an act, and it should not be countenanced in "Year 15" of the judgment collection process while the judgment debtor remains in contempt with an open capias for his serial violations of court orders. We believe the evidence will establish the liability of both defendants.

## BACKGROUND

### A. The Connecticut Judgment and Contempt History

In 2012, a jury found that Dr. Martinez had installed spy cameras in Welsh's bedroom pointed toward her bed, a camera positioned toward her shower, keystroke spyware on her computer, and a GPS tracker on her vehicle. *Welsh v. Martinez*, 157 Conn. App. 223 (2015). The jury awarded Welsh $2,360,000. *Id.* That judgment was domesticated in Florida on February 9, 2021. ECF No. 13-1 at 1.

4

Immediately after the verdict, the Connecticut court entered an asset standstill order enjoining Dr. Martinez from voluntarily transferring or encumbering any assets beyond ordinary living expenses. ECF No. 13-1, Ex. C. Dr. Martinez, then earning $700,000 per year net as a cardiac surgeon, responded by depositing the entirety of his wages into an account held solely in his then-wife Cristina's name from October 2012 through March 2016, placing more than $2.2 million beyond Welsh's reach. *Welsh v. Martinez*, 191 Conn. App. at 869-70. When his bank account was frozen, he and Cristina opened a new account solely in her name for the express purpose of placing his wages beyond the reach of a judgment creditor. *Id.* at 874-75.

The Connecticut courts found that conduct to be willful and contemptuous, Welsh was awarded a compensatory fine of $2,048,009 payable at $25,000 per month directly to Welsh, and the Connecticut Appellate Court affirmed, describing the scheme as a "gross exercise of self-help which the law disallows." *Id.* at 875. On February 19, 2020, the Connecticut Superior Court entered its Ruling on Remand, fixing the total compensatory fine at $2,048,009 and reaffirming the $25,000-per-month payment obligation and the obligation for Dr. Martinez to submit quarterly sworn asset and income disclosures to Welsh. ECF No. 13-1, Ex. D at pp. 51-55. Dr. Martinez failed to submit any of his required sworn asset disclosures between August 2020 and August 2021. In December 2020, after Dr. Martinez continued to pay nothing, Judge

Schuman in Connecticut found that he "remains in contempt of court" and issued a capias for his arrest. ECF No. 13-1, Ex. M. That capias remains open and Dr. Martinez has never surrendered. W. Martinez Dep. 87:19-21.

## B. The Florida Fraudulent Transfers

### 1. The Englewood Property (March 2020)

On January 23, 2020, Welsh filed a Statement of Amount of Judgment in the Connecticut Superior Court. ECF No. 13-1, ¶ 13. Eight days later, on January 31, 2020, Dr. Martinez withdrew $120,000 from his American Funds retirement account. *Id.* Twelve days after the February 19, 2020 Ruling on Remand fixed his liability at $2,048,009, Dr. Martinez transferred that $120,000 in retirement proceeds as a gift to Kelly Martinez, funding the purchase of a home at 6231 Lomax St., Englewood, Florida (the "Englewood Property"). ECF No. 13-1, ¶ 14. The purchase price was $238,200, Ms. Martinez signed a $108,200 mortgage in favor of Bank of America, ECF No. 13-1, Ex. F, and Dr. Martinez contributed the $120,000 balance. *Id.*, ¶ 18.

The mortgage documents expressly characterized Dr. Martinez's contribution as a "gift." W. Martinez Dep. 42:6-13. At her deposition, Ms. Martinez confirmed she received a gift of $120,000 from Dr. Martinez for the purchase of the Englewood home. K. Martinez Dep. 52:15-22. Dr. Martinez was not on the deed. ECF No. 13-1, Ex. E. He was not on the mortgage. ECF No. 13-1, Ex. F. He had no legal obligation to contribute to that purchase. He

6

funneled his assets to the co-defendant while he not only failed to pay his creditor, he violated the court's series of contempt orders requiring payment of $25,000 per month as a contempt sanction.

### 2. The Secoya Property: Down Payment and Mortgage Paydown (August 2020)

On August 13, 2020, the day before the Connecticut Superior Court would enter another contempt order finding that Dr. Martinez had skipped every $25,000 monthly payment since August 2019, sellers signed a warranty deed for the property at 15919 Secoya Reserve Circle, Naples, Florida (the "Secoya Property"). ECF No. 13-1, Ex. H; ECF No. 13-1, Ex. G at 1. The Secoya Property features four bedrooms, three and a half bathrooms, 3,091 square feet, and a pool. ECF No. 13-1 at 27.

Dr. Martinez, still unemployed and proclaiming an inability to pay Plaintiff anything, including the Court-imposed monthly sanction payment, contributed $140,000 in cash from his retirement account as a "bona fide gift," memorialized by a Gift Letter. W. Martinez Dep. 75:17-25. Ms. Martinez confirmed she received a gift of approximately $139,000 from Dr. Martinez for the purchase of the Secoya home. K. Martinez Dep. 47:6-16.

On August 28, 2020, the same day the $480,000 Prosperity mortgage was recorded, ECF No. 13-1, Ex. J, and less than two weeks after the Connecticut court ordered Dr. Martinez to pay $25,000 by September 15, 2020 or face

incarceration, ECF No. 13-1, Ex. G, Dr. Martinez transferred $380,000 from his Bank of America account to Prosperity to pay down Ms. Martinez's mortgage from $480,000 to approximately $100,000. ECF No. 13-1 at 38-39. He was unemployed. He was not on the mortgage. ECF No. 13-1, Ex. J. He paid Welsh nothing at that time, which demonstratives his state of mind and scienter.

In total, Dr. Martinez transferred $640,000 in cash to or for Ms. Martinez's account and benefit for these two properties over a six-month period, while admittedly insolvent, subject to multiple contempt orders, and while making no payments to Welsh. ECF No. 146 at 38.

3. **The Joint PNC Account: Ongoing Wage Diversion of Approximately $2 Million, Transferred in the Same Manner in Violation of the Asset Standstill Order, Out of the Creditor's Reach**

After regaining full-time employment at Riverview Cardiac Surgery in March 2022 at a base salary of $300,000 per year plus production bonuses, which has since more than doubled to $642,903.73 over the past 12 months, Dr. Martinez opened a joint PNC Bank account with Ms. Martinez in April 2022, specifically, in his own words at deposition, so that she could more easily access his money. W. Martinez Dep. 130:6-9. He deposits the entirety of his paychecks into the PNC account. W. Martinez Dep. 130:10-12. Ms. Martinez does not deposit her own income there, she maintains a separate Wells Fargo

8

account from which she continues to pay all household bills. K. Martinez Dep. 139:10-22; 127:6-8. Dr. Martinez pays no household bills in his own name other than his credit cards. W. Martinez Dep. 95:20-96:2.

This joint bank account between Dr. Martinez and Kelly Martinez, a married couple, is beyond the reach of Welsh, as a creditor, just as the ex-wife Cristina Martinez's bank account was beyond Welsh's reach from 2012-2016. Dr. Martinez was held in contempt of court in Connecticut for these transfers, as the Connecticut court held that transfers of wages beyond the creditor's reach violated the Asset Standstill Order. Dr. Martinez has done it again, as he has transferred all of his wages, of approximately $2 million, into this "beyond the reach of a creditor" account at all times since April 2022.

In the meantime, Ms. Martinez physically withdraws cash from the PNC account and deposits it into her personal Wells Fargo account to pay expenses. K. Martinez Dep. 152:6-16; 154:17-23. The purpose of this structure, which is eerily similar to the Connecticut scheme condemned as willful contempt, is to keep Dr. Martinez's wages accessible to the couple while placing them beyond Welsh's reach.

### 4. $1,535,947.32 in Income from the Retirement Accounts since 2020

Dr. Martinez failed to make a single payment to Welsh between August 2019 and August 2020. He made one $25,000 monthly contempt fine payment

9

on September 15, 2020 to avoid incarceration, but then he failed to make another payment from October 2020 through June 2023. During this time, he drew down his retirement account from approximately $1.5 million in February 2020 to $0 by January 2023.

### 5. *Dissipation of Assets, Overwithholding, IRS Refund Checks*

When Dr. Martinez resumed his work as a surgeon in December 2021, he waited until July 2023 to make a single payment to Welsh, earning $418,140.80 in take home pay[1] before he began mustering monthly payments to Welsh in the amount of between $3,000 and $5,000 through May 2025. Dr. Martinez also "overwithheld" his tax withholding, received tax refund checks, and then dissipated those assets, leaving them off his quarterly asset disclosures.

### ANALYSIS OF FRAUDULENT TRANSFER CLAIMS

A judgment-debtor, contemnor, and fugitive who has not attempted to purge his contempt for fraudulently transferring his assets in Connecticut comes to Florida and fraudulently transfers his assets in our state. He does not attempt to determine what he could pay. W. Martinez Dep. 124:11-20. He

---

[1] Despite having been ordered to disclose his wages, Dr. Martinez insisted on disclosing a lower figure he referred to as his "take home pay" instead. This allowed Dr. Martinez to engage in two more deceptive acts, overwithholding of taxes and underreporting of income. After Welsh objected, the Court ordered Dr. Martinez to disclose his wages.

10

admits that, given his retirement account balance and his salary, "sure, there's money that could be paid" to Welsh. W. Martinez Dep. 122:13-25. He testified he is simply "waiting for a judge in Florida to order him" before paying anything. W. Martinez Dep. 57:21-58:2 (he has since been ordered to pay a minimum of $21,000 per month). His wife testified that she will never ask him about paying Welsh "as long as she lives" and has "no idea" whether the couple's $450,000-$500,000 annual household income could contribute to the judgment (their household income is higher now). K. Martinez Dep. 185:2-186:6.

## A. Legal Standards

To establish actual fraud under Fla. Stat. § 726.105(1)(a), Welsh must prove: (1) a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property applicable to payment of the debt. *Johnson v. Dowell,* 592 So. 2d 1194, 1196 (Fla. Dist. Ct. App. 1992). For constructive fraud under §§ 726.105(1)(b) and 726.106, Welsh must prove Dr. Martinez was insolvent at the time of the transfers and did not receive reasonably equivalent value. Fla. Stat. § 726.106(1).

Intent to defraud is assessed through the statutory badges of fraud. Fla. Stat. § 726.105(2)(a)-(k). Several badges together afford a basis to infer fraud and, when multiple badges are present, raise a rebuttable presumption of fraudulent intent. *Wiand v. Lee,* 753 F.3d 1194, 1200 (11th Cir. 2014). When a

11

husband is insolvent, a rebuttable presumption independently arises that transfers to his wife are fraudulent, and she bears more than the ordinary burden to prove consideration proportionate to the value of the property transferred. *Harkins v. Holt*, 169 So. 481, 482 (Fla. 1936); *United States v. Horton*, 760 F.2d 1225, 1228 (11th Cir. 1985). Love, affection, and so-called marital consideration do not constitute reasonably equivalent value. *Walker v. Treadwell (In re Treadwell)*, 699 F.2d 1050, 1051 (11th Cir. 1983); *United States v. Major*, 551 B.R. 531, 542 (M.D. Fla. 2016).

### B. Ten Badges of Fraud are Present

At least ten of the eleven statutory badges of fraud are supported by undisputed record evidence. Below is some, but not all, of the analysis of the evidence as applied to the badges of fraud.

a. Insider. Kelly Martinez is Dr. Martinez's wife, an insider under Fla. Stat. §§ 726.102(8), (13). ECF No. 146 at 3.

b. Retained possession and control. Dr. Martinez lived in both homes. Ms. Martinez provided him full access to their joint PNC account, including a bank card in her name and account access. W. Martinez Dep. 130:6-9; ECF No. 146 at 27.

c. Concealment. Dr. Martinez failed to disclose the Englewood and Secoya transfers to Welsh or to the Connecticut court as required by the asset disclosure order. ECF No. 13-1 at 13; ECF No. 146 at 23.

d. Pending judgment and suit. Welsh's $2.36 million judgment had been outstanding since 2012. The contempt fine was re-liquidated 12 days before the Englewood transfer, and an

12

incarceration warning was issued the day before the Secoya closing. ECF No. 13-1, Exs. D, G.

e. Substantially all assets. Dr. Martinez transferred more than $640,000, the substantial entirety of his liquid retirement assets, while insolvent. ECF No. 146 at 38; W. Martinez Dep. 122:13-25.

f. Absconded. Dr. Martinez is a fugitive from the December 23, 2020 Connecticut capias. ECF No. 13-1, Ex. M. He has refused to surrender. W. Martinez Dep. 87:19-21.

g. Removed or concealed assets. Dr. Martinez withdrew more than $1,069,428 from his retirement accounts between January 2020 and March 2023, used those funds for purposes other than paying Welsh, and failed to provide his quarterly asset disclosures for more than a year. ECF No. 146 at 50-51.

h. No reasonably equivalent value. Every transfer was documented as a gift on its face. Dr. Martinez received no deed interest in Englewood, ECF No. 13-1, Ex. E, no legal obligation on either mortgage, ECF No. 13-1, Exs. F, J, and no enforceable ownership right. Both Defendants signed Gift Letters memorializing the transfers as bona fide gifts. W. Martinez Dep. 75:17-25; K. Martinez Dep. 44:8-12, 47:6-16.

i. Insolvency. From January 1, 2020 forward, Dr. Martinez's debts to Welsh alone exceeded $2 million while his total assets never approached that figure. ECF No. 146 at 38; ECF No. 13-1, Ex. G.

j. Transfer shortly after substantial debt incurred. The Englewood transfer occurred 12 days after the contempt fine was re-liquidated at $2,048,009. ECF No. 13-1, Ex. D. The Secoya transactions occurred the day before and the day of the August 14, 2020 incarceration-warning contempt order. ECF No. 13-1, Ex. G.

13

### C. Intent: Dr. Martinez's Florida Scheme Follows Dr. Martinez's Connecticut Scheme

The Connecticut Appellate Court made detailed factual findings: Dr. Martinez deposited his wages into his then-wife's account "for the express purpose of placing the entirety of his wages outside the reach of a judgment creditor" and "with the intention of depriving the plaintiff of significant statutory postjudgment procedures." *Welsh v. Martinez*, 191 Conn. App. at 869-70. When that account was frozen, he opened a new one solely in her name to accomplish the same purpose. *Id.* at 874-75. He did this for years, knowingly, while the contempt proceedings were ongoing. The Appellate Court held that conduct was a "gross exercise of self-help which the law disallows" and that exonerating it "would be an undue inducement to litigants' exercise of self-help." *Id.* at 875. Dr. Martinez was brazen then, and he is just as brazen now.

In Florida, Dr. Martinez has a new wife, but he continues the same scheme. The only time he paid Welsh was when the court had explicitly threatened incarceration if he did not. ECF No. 13-1, Ex. G. The moment that immediate threat passed, he stopped again. W. Martinez Dep. 87:16-18. When he resumed earning a substantial salary, rather than direct even a portion toward Welsh, he opened a joint account specifically so Ms. Martinez could access his money more easily, W. Martinez Dep. 130:6-9, and deposited the entirety of every paycheck into it, W. Martinez Dep. 130:10-12.

14

### D. Reasonably Equivalent Value: The Gifts Speak for Themselves

Defendants' own documents foreclose that narrative. Each real-property transfer is memorialized as a gift, not as consideration for shelter. The Gift Letter certifies the $140,000 Secoya down payment as a "bona fide gift." W. Martinez Dep. 75:17-25. The $120,000 Englewood contribution was also a "gift." W. Martinez Dep. 42:6-13. Ms. Martinez confirmed she received gifts from Dr. Martinez for each home at her deposition. K. Martinez Dep. 44:8-12; 47:6-16; 52:15-22.

Ms. Martinez's own income and credit independently supported both modest mortgages without any contribution from Dr. Martinez. Ms. Martinez earned a base salary of $165,000 per year (likely higher now) and had approximately $400,000 in assets at the time of the Secoya purchase. ECF No. 13-1 at 35. Her monthly payment on the $480,000 Secoya mortgage was $2,641 inclusive of escrow, against monthly income of $13,750. ECF No. 13-1 at 36. She testified at deposition that she qualified for the mortgages and had the ability to fulfill those obligations. K. Martinez Dep. 87:16-22. Dr. Martinez's contributions were not necessary. When a transferor is insolvent, the transferee bears more than the ordinary burden of establishing that the consideration was proportionate to the value conveyed. *Harkins*, 169 So. at 482; *Horton*, 760 F.2d at 1228.

15

### E. Homestead and Retirement Exemptions are Inapposite

Dr. Martinez withdrew more than $1.5 million from his IRAs and used those funds for gifts to his wife, transfers to his wife, and other non-retirement purposes. ECF No. 146 at 50-51. Under *In re Yerian*, 927 F.3d 1223, 1231 (11th Cir. 2019), a debtor who uses IRA funds primarily for self-dealing and immediate personal benefit, as Dr. Martinez did by purchasing homes as gifts and paying down his wife's mortgage, forfeits the retirement account exemption.

Florida Statute section 222.30 provides that a conversion of nonexempt assets into exempt assets made with actual intent to hinder, delay, or defraud a creditor is a fraudulent asset conversion. *In re Jennings,* 332 B.R. 465, 469 (Bankr. M.D. Fla. 2005), aff'd sub nom. *Jennings v. Maxfield*, 2006 WL 6829886 (M.D. Fla. Apr. 5, 2006). Property held as tenants by the entireties is exempt only where the original transfer into that status was not fraudulent. *In re Anderson*, 561 B.R. at 240; Nevins, 409 So. 2d at 180. Dr. Martinez converted his nonexempt retirement funds into the Secoya homestead, and deposited his wages into a tenants-by-the-entireties joint account, with actual intent to hinder, delay, and defraud Welsh. Neither exemption applies.

16

F. **The PNC Account Wage Transfers are Continuing Fraudulent Transfers**

Dr. Martinez's deposit of the entirety of his paychecks into the joint PNC account, while Ms. Martinez maintains a separate account from which she pays all household expenses, constitutes a continuing fraudulent transfer of his wages. It is the same scheme Connecticut condemned and for which Dr. Martinez is still in contempt.

## REQUESTED RELIEF

Welsh believes the evidence supports the following findings and judgment:

1. Finding that Dr. Martinez's transfers of $120,000 for the Englewood Property, $140,000 for the Secoya Property down payment, and $380,000 to pay down the Secoya mortgage constitute fraudulent transfers under Fla. Stat. §§ 726.105 and 726.106, avoidable by Welsh;

2. Finding that Dr. Martinez's ongoing deposit of his employment wages into the joint PNC account constitutes a continuing fraudulent transfer under Fla. Stat. § 726.105;

3. Imposing an equitable lien on the Secoya Property in the amount of Dr. Martinez's contributions ($520,000), or in the alternative, voiding the fraudulent transfers and directing that the transfer proceeds be applied to Welsh's judgment;

4. Entering declaratory and injunctive relief under Fla. Stat. § 726.108(1)(a)-(c) and the Court's equitable powers to prevent further transfers of Dr. Martinez's income and assets;

5. Finding Dr. Martinez's retirement account exemption and homestead exemption inapplicable under the circumstances presented; and

17

6. Awarding Welsh all other relief the Court deems just and proper.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:   */s/ Kenneth E. Chase*
Kenneth E. Chase
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
Fax: (305) 402-2725
Email: kchase@chaselaw.com

*Counsel for Plaintiff D'Anna Welsh*

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF, which serves electronic notice to all counsel of record, on March 23, 2026.

By:   */s/ Kenneth E. Chase*
Kenneth E. Chase

18