UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| D'ANNA WELSH, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:22-cv-00216-KCD-NPM |
| | ) |
| v. | ) |
| | ) |
| WILLIAM V. MARTINEZ, JR., and | ) |
| KELLY MARTINEZ f/k/a KELLY | ) |
| ROUSSEAU, | ) |
| | ) |
| Defendants. | ) |

## JOINT PRETRIAL STATEMENT

Pursuant to the Court's Scheduling Order and the Local Rules of this Court, Plaintiff D'Anna Welsh and Defendants William V. Martinez Jr. ("Dr. Martinez") and Kelly Martinez f/k/a Kelly Rousseau ("Ms. Martinez") hereby submit their Joint Pretrial Statement.

## I. JURISIDCTION AND VENUE

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs. Venue is proper.

## II. CONCISE STATEMENT OF THE ACTION

**Plaintiff's Statement**: In the 14th year of Plaintiff's quest to enforce and collect on a $2.36 million judgment entered against Dr. Martinez in 2012, the outstanding balance of which now sits at $2.59 million inclusive of interest, Plaintiff seeks an order setting aside a sequence of asset transfers beginning in 2020 that Defendant Dr. Martinez made to Defendant Ms. Martinez, who he married in November 2019. These asset transfers total $2.42 million.

Plaintiff alleges the transactions are fraudulent transfers under Florida's Uniform Fraudulent Transfer Act and Florida's fraudulent asset conversion statute because they were made without reasonably equivalent value, when Dr. Martinez was subject to large unsatisfied obligations and in knowing violation of existing court orders, with the intent to keep assets beyond Plaintiff's reach. Defendants deny liability and contend the transfers served legitimate purposes, involved exempt assets or ordinary marital support, and were not made with fraudulent intent.

**Defendants' Statement**: This case stems from a judgment issued on December 5, 2012 in Connecticut which Plaintiff obtained against Dr. Martinez. Plaintiff seeks to enforce the foreign judgment against Dr. Martinez, and, in doing so, asserts Florida fraudulent transfer and related equitable theories against Dr. Martinez and Mrs. Martinez. Defendants deny liability and contend, among other things, that Plaintiff's theories fail because the

2

alleged "transfers" involve property that is exempt from creditor process and therefore not reachable through fraudulent transfer remedies under Florida law.

### III. CONCISE STATEMENT OF EACH PARTY'S POSITION

### A. Plaintiff's Position

Dr. Martinez is a high-income earning surgeon with a history of violating court orders in connection with paying Plaintiff money that he owes her. Dr. Martinez's conduct in leading to the judgment is unsettling. Dr. Martinez comes before this Court 13 years after the judgment was entered, currently in contempt of court for the past eight years. In 2017, Dr. Martinez was held in contempt by a Connecticut judge for violating a 2012 asset standstill order, which is still in effect, that prohibits Dr. Martinez from transferring assets other than business assets in the ordinary course of business and personal assets for ordinary living expenses, including court-ordered alimony and child support. Between 2012 and 2016, Dr. Martinez transferred $2,220,400.67 of his wages directly to his then-wife Cristina Martinez's bank account, out of Plaintiff's reach as his creditor. The Connecticut contempt finding was affirmed on appeal in 2019.

Per the 2017 contempt order, which was reiterated by multiple Connecticut judges in 2019 and 2020, Dr. Martinez was required to pay Plaintiff $25,000 per month as a contempt sanction and to submit quarterly

asset disclosures to Plaintiff. Three additional Connecticut contempt orders in 2020 culminated in the December 2020 issuance of a capias by the Connecticut court for Dr. Martinez's arrest. Dr. Martinez refused to submit to the court's authority, he never returned to Connecticut, and he is currently a fugitive.

While evading his obligations in Connecticut, Dr. Martinez married Ms. Martinez in November 2019 and promptly began transferring assets to her in Florida. The chart below reflects the fraudulent transfers at issue in this lawsuit.

| | Description | Date | Amount | Source Account | Recipient/Destination |
|---|---|---|---|---|---|
| 1 | Englewood Gift | 1/31/2020 | $120,000.00 | Dr. Martinez's Capital Group / American Funds Redemption Check dated 1/31/2020 (Check Endorsed to Kelly Rousseau and deposited) | Deposited in Wells Fargo account, acknowledged by Ms. Martinez as the $120,000 gift received (deposited on 2/6/2020) |
| 2 | Secoya Gift from Dr. Martinez to Ms. Martinez per 8/9/2020 Prosperity Gift Letter | 7/21/2020 | $119,970.00 | Wire Xfr Cr Domestic (Dr. Martinez) | Kelly Rousseau individual People's United Bank x-6751 (wire received 7/21/2020) |
| 3 | Secoya Gift from Dr. Martinez to Ms. Martinez per 8/9/2020 Prosperity Gift Letter | 8/5/2020 | $20,000.00 | Online/Phone Xfr in (Dr. Martinez) | Kelly Rousseau individual People's United Bank x-6751 (wire received 8/5/2020) |

| | | | | | |
|---|---|---|---|---|---|
| 4 | Additional Wire from Dr. Martinez to Ms. Martinez, not reflected in Gift Letter | 8/20/2020 | $140,000.00 | Online/Phone Xfr in (Dr. Martinez) | Kelly Rousseau individual People's United Bank x-6751 (wire received 8/5/2020) |
| 5 | Secoya Mortgage Prepayment | 8/27/2020 | $380,000.00 | Dr. Martinez's individual Bank of America x-8535 (wire out 8/27/2020) | Prosperity Home Mortgage |
| 6 | Secoya Cash out Refi Payment | 8/30/2021 | $96,048.00 | Sender is Florida Escrow Acct at Bank of America | Ms. Martinez's individual Wells Fargo x-6321 (wire received 8/30/2021 from Florida Escrow Account) |
| 7 | Regions Cashier's Check Double Endorsement | 12/16/2021 | $49,990.05 | Regions cashier's check dated 12/15/2021 (Pay to the Order of William Martinez, Purchased for Kelly Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 12/16/2021) |
| 8 | Cash Transfer | 12/16/2021 | $5,500.00 | Cash (from Dr. Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 12/16/2021) |
| 9 | Check from Dr. Martinez to Ms. Martinez | 1/14/2022 | $6,003.11 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-6321 (ATM check deposit Vanderbilt Beach 1/14/2022) |
| 10 | Check from Dr. Martinez to Ms. Martinez | 1/14/2022 | $5,526.95 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-6321 (ATM check deposit Vanderbilt Beach 1/14/2022) |
| 11 | Check from Dr. Martinez to Ms. Martinez | 2/10/2022 | $9,028.50 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-6321 (e-deposit in store Vanderbilt Beach branch 2/11/2022) |
| 12 | Check from Dr. Martinez to Ms. Martinez | 2/10/2022 | $6,471.50 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-6321 (e-deposit in store Vanderbilt Beach branch 2/11/2022) |
| 13 | Check from Dr. Martinez to Ms. Martinez | 3/15/2022 | $9,260.90 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-6321 (e- |

5

| | | | | | |
|---|---|---|---|---|---|
| | | | | | deposit in store Vanderbilt Beach branch 3/17/2022) |
| 14 | Check from Dr. Martinez to Ms. Martinez | 3/15/2022 | $11,189.10 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-9116 (e-deposit in store Vanderbilt Beach branch 3/17/2022) |
| 15 | Check from Dr. Martinez to Ms. Martinez | 4/2/2022 | $8,100.00 | Dr. Martinez's individual Regions x-4201 | Ms. Martinez's individual Wells Fargo x-6321 (e-deposit in store Airport Pulling Road 4/4/2022) |
| 16 | Dr. Martinez signs check from joint PNC Bank account to Ms. Martinez | 5/7/2022 | $11,218.82 | Joint PNC Bank account x-9222 | Ms. Martinez's individual Wells Fargo x-6321 (ATM Deposit Tamiami Trail 5/9/2022) |
| 17 | Dr. Martinez signs check from joint PNC Bank account to Ms. Martinez | 5/31/2022 | $10,186.10 | Joint PNC Bank account x-9222 | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 5/31/2022) |
| 18 | Cashier's check from PNC Bank to Ms. Martinez | 6/30/2022 | $11,650.00 | Cashier's check PNC Bank (Pay to the Order of Kelly Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 6/30/2022) |
| 19 | Cashier's check from PNC Bank to Ms. Martinez | 7/29/2022 | $9,083.60 | Cashier's check PNC Bank (Pay to the Order of Kelly Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 7/29/2022) |
| 20 | Cashier's check from PNC Bank to Ms. Martinez | 8/31/2022 | $9,187.29 | Cashier's check PNC Bank (Pay to the Order of Kelly Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 8/31/2022) |
| 21 | Cashier's check from PNC Bank to Ms. Martinez | 10/3/2022 | $9,341.03 | Cashier's check PNC Bank (Pay to the Order of Kelly Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (ATM Deposit Vanderbilt Beach 10/3/2022) |
| 22 | Cashier's check from PNC Bank to Ms. Martinez | 10/31/2022 | $20,000.00 | Cashier's check PNC Bank (Pay to the Order of Kelly Martinez) | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 11/1/2022) |
| 23 | Cashier's check from PNC | 11/30/2022 | $9,660.66 | Cashier's check PNC Bank (Pay | Ms. Martinez's individual Wells Fargo x-6321 (eDeposit 11/30/2022) |

6

| | | | | |
|---|---|---|---|---|
| | Bank to Ms. Martinez | | | to the Order of Kelly Martinez) | |
| 24 | Dr. Martinez places his wages via direct deposit directly in TBE Account, out of Creditor's Reach | 5/31/2022 | $29,971.80 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 25 | Direct transfer of wages out of creditor's reach | 6/30/2022 | $25,690.69 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 26 | Direct transfer of wages out of creditor's reach | 7/29/2022 | $23,505.03 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 27 | Direct transfer of wages out of creditor's reach | 8/31/2022 | $25,493.22 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 28 | Direct transfer of wages out of creditor's reach | 9/30/2022 | $23,584.06 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 29 | Direct transfer of wages out of creditor's reach | 10/31/2022 | $27,333.92 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 30 | Direct transfer of wages out of creditor's reach | 11/30/2022 | $22,408.90 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 31 | Direct transfer of wages out of creditor's reach | 12/30/2022 | $21,538.82 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 32 | Direct transfer of wages out of creditor's reach | 1/31/2023 | $23,727.25 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 33 | Direct transfer of wages out of creditor's reach | 3/1/2023 | $19,496.61 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |

| | | | | | |
|---|---|---|---|---|---|
| 34 | Direct transfer of wages out of creditor's reach | 3/31/2023 | $22,093.29 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 35 | Direct transfer of wages out of creditor's reach | 4/23/2023 | $23,062.78 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 36 | Direct transfer of wages out of creditor's reach | 5/31/2023 | $23,895.28 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 37 | Direct transfer of wages out of creditor's reach | 6/30/2023 | $27,860.81 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 38 | Direct transfer of wages out of creditor's reach | 7/31/2023 | $24,789.87 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 39 | Direct transfer of wages out of creditor's reach | 8/31/2023 | $22,776.39 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 40 | Direct transfer of wages out of creditor's reach | 9/29/2023 | $25,292.59 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 41 | Direct transfer of wages out of creditor's reach | 10/31/2023 | $23,828.01 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 42 | Direct transfer of wages out of creditor's reach | 11/30/2023 | $30,110.48 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 43 | Direct transfer of wages out of creditor's reach | 12/29/2023 | $30,813.51 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 44 | Direct transfer of wages out of creditor's reach | 1/31/2024 | $34,727.94 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |

| | | | | | |
|---|---|---|---|---|---|
| 45 | Direct transfer of wages out of creditor's reach | 2/29/2024 | $30,684.97 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 46 | Direct transfer of wages out of creditor's reach | 3/29/2024 | $33,645.39 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 47 | Direct transfer of wages out of creditor's reach | 4/30/2024 | $38,697.57 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 48 | Direct transfer of wages out of creditor's reach | 5/31/2024 | $31,777.22 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 49 | Direct transfer of wages out of creditor's reach | 6/28/2024 | $33,149.82 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 50 | Direct transfer of wages out of creditor's reach | 7/31/2024 | $37,051.48 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 51 | Direct transfer of wages out of creditor's reach | 8/30/2024 | $38,934.29 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 52 | Direct transfer of wages out of creditor's reach | 9/30/2024 | $32,458.33 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 53 | Direct transfer of wages out of creditor's reach | 10/31/2024 | $28,449.44 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 54 | Direct transfer of wages out of creditor's reach | 11/29/2024 | $35,000.07 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 55 | Direct transfer of wages out of creditor's reach | 12/31/2024 | $35,488.92 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |

| | | | | | |
|---|---|---|---|---|---|
| 56 | Direct transfer of wages out of creditor's reach | 1/31/2025 | $27,650.57 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 57 | Direct transfer of wages out of creditor's reach | 2/28/2025 | $30,766.60 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 58 | Direct transfer of wages out of creditor's reach | 3/31/2025 | $33,201.82 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 59 | Direct transfer of wages out of creditor's reach | 4/30/2025 | $34,018.55 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 60 | Direct transfer of wages out of creditor's reach | 5/30/2025 | $32,540.83 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 61 | Direct transfer of wages out of creditor's reach | 6/30/2025 | $36,090.02 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 62 | Direct transfer of wages out of creditor's reach | 7/31/2025 | $46,831.98 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 63 | Direct transfer of wages out of creditor's reach | 8/29/2025 | $37,464.39 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 64 | Direct transfer of wages out of creditor's reach | 9/30/2025 | $37,919.24 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 65 | Direct transfer of wages out of creditor's reach | 10/31/2025 | $33,859.32 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
| 66 | Direct transfer of wages out of creditor's reach | 11/28/2025 | $36,410.76 | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |

10

| | | | | Riverview Cardiac Surgery PA, Regions Bank x-7477 | Joint PNC Bank account, Dr. Martinez and Ms. Martinez as TBE x-9222 |
|---|---|---|---|---|---|
| 67 | Direct transfer of wages out of creditor's reach | 12/31/2025 | $49,792.74 | | |
| | **TOTAL** | | **$2,421,301.18** | | |

The primary issue at trial is not the transactions themselves, as there is no question per the evidence that the transfers occurred, the question is Dr. Martinez's intent. Moreover, none of the transfers occurred with purportedly "exempt" assets, that argument is baseless. While flouting court orders, while in contempt, and then with an open capias for his arrest, Dr. Martinez withdrew $1.5 million out of his retirement accounts in the form of distributions into non-retirement bank accounts. It was from the non-retirement bank accounts that Dr. Martinez made the fraudulent transfers.

Moreover, instead of making payments to Plaintiff pursuant to the judgment entered in 2012, Dr. Martinez instead violated the asset standstill order in another manner by transferring a portion of his post-judgment wages into the retirement accounts in the first place. This permanently tainted those now-empty accounts which Dr. Martinez invokes in an attempt to conjure up a post-hoc rationalization for more of his disobedient conduct. Plaintiff respectfully submits that the facts reflect a hornbook fraudulent transfer case with several aggravating factors, including Dr. Martinez's 14-year history of obstruction, disobedience, and asset transfers.

## B. Defendants' Position

The basis of Counts One and Two of Plaintiff's Amended Complaint is that Dr. Martinez "fraudulently transferred" retirement funds from his IRA to purchase a home or pay a mortgage in violation of the Uniform Fraudulent Transfer Act ("UFTA"). However, UFTA does not apply to assets which are exempt under nonbankruptcy law. Additionally, the Florida Supreme Court's holding in *Havoco of America, Ltd. v. Hill*, 780 So.2d. 1018 (Fla. 2001), that (with one exception not relevant here) funds used to purchase a homestead are not recoverable by a creditor. Thus, Plaintiff's allegation that Dr. Martinez acted with an "intent to defraud" is irrelevant. In any event, Defendants did not intend to defraud Plaintiff. Dr. Martinez was unemployed both times when he used funds from his exempt IRA to purchase a home for his family, so that his wife, Mrs. Martinez, could afford to house, feed, and clothe Dr. Martinez and her own child, who Dr. Martinez has taken in as his own.

Plaintiff also asserts that Dr. Martinez putting his wages in a joint bank account is an intent to defraud Plaintiff and a violation of UFTA. However, 75% of Dr. Martinez's wages would be exempt from any garnishment by Plaintiff, and cannot be considered a fraudulent transfer. The remaining 25% is being used by Dr. Martinez to pay his living expenses, and to pay Plaintiff (at $21,000 per month). Mrs. Martinez handled payment of the household bills prior to Dr. Martinez's employment and continues to handle payment of the

12

household bills now that Dr. Martinez is employed. Dr. Martinez and Mrs. Martinez did not have a joint bank account into which Dr. Martinez's wages would be deposited when he became employed, and Mrs. Martinez needed to have access to transfer money that is necessary for household bills. Additionally, Dr. Martinez is using his wages to pay his own share of the household bills, so it is in effect no transfer whatsoever. Plaintiff has always been able to access Dr. Martinez's wages prior to their deposit into the joint account if she garnished Dr. Martinez's wages, but she voluntarily chose not to do so and still has not done so. Thus, Dr. Martinez's wages have always been "within the reach" of Plaintiff.

UFTA requires, among other factors, that Plaintiff prove that Dr. Martinez did not receive reasonably equivalent value in exchange for the transfers. As explained previously, Dr. Martinez using his retirement funds when he was unemployed was the only way he could pay for a roof over his head, all of the additional carrying costs of a home, and all living expenses, since Mrs. Martinez would be paying for all those things from her own income for some unknown time in the future. In addition, once Dr. Martinez was earning wages, he put those funds into a joint account so his household expenses could be paid. There is no question that the benefit he received was equivalent to the wages he put into the account.

13

Plaintiff is not entitled to injunctive relief. She has not suffered irreparable injury and has an adequate remedy at law. See *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiff is not entitled to equitable relief, such as a lien on the Defendants' homestead. Such would be a violation of the Florida Supreme Court's ruling in *Havoco*. As stated in *Havoco*, courts "have invoked equitable principles to reach beyond the literal language of the exceptions [included in the constitution] ***only where funds obtained through fraud or egregious conduct were used to invest in, purchase, or improve the homestead***. *Havoco*, 790 So. 2d at 1028 (emphasis supplied). Plaintiff is also not entitled to declaratory relief. This Court is without jurisdiction to do so, and Plaintiff's request amounts to nothing more than seeking legal advice from the Court.

## IV. EXHIBIT LIST WITH OBJECTIONS

A. Plaintiff's Exhibits – Please see Plaintiff's Exhibit List filed with the Court. Joint exhibits to be submitted separately.

B. Defendants' Exhibits – Please see Defendants' Amended Exhibit List filed with the Court.

## V. WITNESS LIST (NAME ONLY, WITH LIKELIHOOD AND OBJECTIONS)

### A. Plaintiff's Witnesses

1.  William V. Martinez, Jr. – will testify.

14

Objections:

2. Kelly Martinez – will testify.

Objections:

3. D'Anna Welsh – will testify.

Objections: Defendants object on relevance grounds

### B. Defendants' Witnesses

1. William V. Martinez, Jr. – will testify.

Objections: None.

2. Kelly Martinez – will testify.

Objections: None.

## VI. EXPERT WITNESS LIST (SUBSTANCE AND OBJECTIONS)

Neither party has any experts.

## VII. DAMAGES (TYPE AND AMOUNT)

Plaintiff seeks the following categories of monetary relief (exclusive of attorneys' fees and taxable costs):

1. Amount of fraudulent transfers and conversions to be unwound

Plaintiff seeks avoidance of, and a corresponding money judgment for, the value of the fraudulent transfers and fraudulent asset conversions identified in this action, in an amount of $2,421,301.18, consisting of the transactions set forth in Section III above, as also shown in ECF No. 180.

15

Plaintiff seeks to recover these amounts primarily from Ms. Martinez, as the initial and/or subsequent transferee of the assets at issue, and from Dr. Martinez to the extent permitted by Florida Statutes chapter 726 and section 222.30, with appropriate credit to avoid any double recovery against the existing Connecticut judgment and contempt obligations.

2.  Equitable monetary relief tied to liens and constructive trusts

To the extent the Court imposes equitable liens or constructive trusts on the Secoya property, any successor homestead, or other assets traceable to the fraudulent transfers, Plaintiff seeks a monetary award equal to the value secured by such liens or trusts, to be applied to satisfaction of the judgment and contempt obligations.

3.  Attorneys' fees and taxable costs

Plaintiff seeks an award of taxable costs under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, and an award of reasonable attorneys' fees to the extent permitted by Florida's fraudulent transfer and fraudulent asset conversion statutes, the domesticated Connecticut orders, or other applicable law, in amounts to be determined by post-judgment motion if Plaintiff prevails.

Defendants dispute Plaintiff's entitlement to any type of relief in this action.

## VIII. DEPOSITIONS OFFERED IN LIEU OF LIVE TESTIMONY

The following depositions, or portions thereof, may be offered in lieu of live testimony, subject to the Federal Rules of Evidence and Civil Procedure:

Plaintiff intends to call both Defendants to testify. Nonetheless, Plaintiff designates the following portions of Defendants' depositions.

1. Deposition of William V. Martinez, Jr., taken on January 30, 2023.

    28:1-25

    30:23-33:14

    38:24-40:25

    41:2-43:5

    44:18-48:8

    49:10-52:12

    52:13-54:17

    54:18-56:24

    57:1-20

    74:21-76:4

    78:21-81:8

    86:25-88:2

    130:6-131:6

2. Deposition of Kelly Martinez, taken on January 26, 2023.

43:2-44:17

46:25-47:18

48:6-20

49:2-52:5

52:12-54:11

55:1-14

56:4-24

57:2-58:19

60:25-62:14

63:11-64:17

65:7-66:15

69:1-70:25

81:5-82:21

115:13-116:24

120:11-121:1

121:8-23

126:15-23

127:16-128:10

137:19-138:7

185:15-186:12

18

## IX. ADMITTED FACTS

The parties stipulate that the following facts are true and require no proof at trial, without waiving legal arguments about their significance:

1.      The parties stipulate to and jointly request judicial notice of all Connecticut and Florida court orders.

2.      On December 5, 2012, the Connecticut court entered judgment in favor of Plaintiff and against Dr. Martinez in the total amount of $2,360,000, consisting of $2,000,000 in compensatory damages and $360,000 in punitive damages, plus post-judgment interest.

3.      On July 9, 2012, the Connecticut court entered an Asset Standstill Order that enjoined Dr. Martinez from voluntarily transferring or encumbering any assets except business assets in the ordinary course of business and personal assets for ordinary living expenses, including court-ordered alimony and child support.

4.      On November 9, 2017, the Connecticut court adjudicated Dr. Martinez in civil contempt for willful violations of the Asset Standstill Order and imposed a compensatory contempt fine in the gross amount of $2,200,000, to be paid in monthly installments of $25,000 to Plaintiff, subject to recalculation on remand.

5.      On February 19, 2020, after remand from the Connecticut Appellate Court, the Connecticut court entered a revised contempt order that

19

fixed the compensatory contempt fine at $2,048,009.06 and directed Dr. Martinez to pay Plaintiff $25,000 per month until fully paid.

6.      On August 14, 2020, the Connecticut court entered an order that reaffirmed the $2,048,009.06 contempt fine, ordered Dr. Martinez to pay Plaintiff $25,000 on September 15, 2020 and on the fifteenth of each month thereafter, and stated that if he failed to make the required payment, he would be incarcerated or otherwise confined for civil contempt and could obtain release upon payment of $25,000.

7.      On December 23, 2020, the Connecticut court entered an order that found Dr. Martinez remained in contempt, noted that he had not made the required $25,000 payments in October, November, or December 2020, issued a capias for his arrest, and set a $75,000 bond as a condition of his release.

8.      The December 23, 2020 contempt and capias order has been domesticated in Florida and is entitled to full faith and credit in this case.

9.      Dr. Martinez and Kelly Martinez married in November 2019 and, since March 2020, have resided in Southwest Florida.

**X. AGREED PRINCIPLES OF LAW**

1.      The Parties defer to the Court on principles of law.

**XI. ISSUES OF FACT**

Without limitation, the factual issues remaining for trial include:

20

1. The parties dispute Dr. Martinez's intent.

2. The parties dispute whether Dr. Martinez received reasonably equivalent value.

3. The parties dispute most or all of the transactions at issue.

4. The parties dispute the amount of the arrearage on the $25,000 and $21,000 monthly contempt fine obligations as of trial.

## XII. ISSUES OF LAW

Without limitation, the legal issues remaining for trial include:

Plaintiff's Proposed Issues:

1. Whether, although the Court held that the fugitive disentitlement doctrine does not foreclose Dr. Martinez's "right to defend this lawsuit at all," given the Court's findings that Dr. Martinez has an outstanding capias in Connecticut for failing to pay his contempt fines, that he is avoiding that warrant, and that he has spent years flouting state court orders (ECF 163 at 8), the Court may draw adverse inferences against Dr. Martinez in weighing his explanations for the transfers at issue.

2. Whether the Connecticut contempt orders, as domesticated in Florida, together with the findings in *Welsh v. Martinez*, 191 Conn. App. 862 (2019) that Dr. Martinez transferred his wage income out of Plaintiff's reach in violation of the Asset Standstill Order in a similar pattern, establish a

21

presumption of fraudulent intent or satisfy one or more statutory badges of fraud under sections 726.105 and 222.30.

3.      Whether, under Florida law and the text of the Asset Standstill Order, any voluntary transfer of assets, including wages, other than business assets in the ordinary course of business and personal assets for ordinary living expenses should be treated as presumptively a fraudulent transfer or fraudulent asset conversion as to Plaintiff, given Dr. Martinez's knowledge of the order, his prior adjudicated violations, and his continued contempt.

4.      Whether Dr. Martinez's violations of the Asset Standstill Order and his nonpayment or underpayment of the monthly contempt fines between August 2019 and May 15, 2025, while earning substantial income, establish as a matter of law that he failed to comply with the contempt orders in at least 68 of 69 months, and whether that record shifts to Defendants the burden of coming forward with evidence of good faith and reasonably equivalent value for the challenged transfers.

5.      What legal effect the arrearage of unpaid monthly contempt sanctions between August 2019 and May 2025, whether calculated as approximately $1,347,000 at $21,000 per month or $1,652,000 at $25,000 per month, should have in this action, including whether that arrearage supports a presumption or inference of fraudulent intent in connection with the transfers at issue.

22

| Month | Date of Contempt Fine Payment Owed | Amount paid | Date of Payment | Modified Contempt Fine Owed | Contempt Fine Owed |
|---|---|---|---|---|---|
| 1 | 8/15/2019 | | | $21,000.00 | $25,000.00 |
| 2 | 9/15/2019 | | | $21,000.00 | $25,000.00 |
| 3 | 10/15/2019 | | | $21,000.00 | $25,000.00 |
| 4 | 11/15/2019 | | | $21,000.00 | $25,000.00 |
| 5 | 12/15/2019 | | | $21,000.00 | $25,000.00 |
| 6 | 1/15/2020 | | | $21,000.00 | $25,000.00 |
| 7 | 2/15/2020 | | | $21,000.00 | $25,000.00 |
| | 2/19/2020 | | 2/19/2020 Order Entered | | |
| 8 | 3/15/2020 | | | $21,000.00 | $25,000.00 |
| 9 | 4/15/2020 | | | $21,000.00 | $25,000.00 |
| 10 | 5/15/2020 | | | $21,000.00 | $25,000.00 |
| 11 | 6/15/2020 | | | $21,000.00 | $25,000.00 |
| 12 | 7/15/2020 | | | $21,000.00 | $25,000.00 |
| | 8/14/2020 | | 8/14/2020 Order Entered | | |
| 13 | 8/15/2020 | | | $21,000.00 | $25,000.00 |
| 14 | 9/15/2020 | $25,000.00 | 9/15/2020 | $21,000.00 | $25,000.00 |
| 15 | 10/15/2020 | | | $21,000.00 | $25,000.00 |
| 16 | 11/15/2020 | | | $21,000.00 | $25,000.00 |
| 17 | 12/15/2020 | | | $21,000.00 | $25,000.00 |
| 18 | 1/15/2021 | | | $21,000.00 | $25,000.00 |
| 19 | 2/15/2021 | | | $21,000.00 | $25,000.00 |
| 20 | 3/15/2021 | | | $21,000.00 | $25,000.00 |
| 21 | 4/15/2021 | | | $21,000.00 | $25,000.00 |
| 22 | 5/15/2021 | | | $21,000.00 | $25,000.00 |
| 23 | 6/15/2021 | | | $21,000.00 | $25,000.00 |
| 24 | 7/15/2021 | | | $21,000.00 | $25,000.00 |
| 25 | 8/15/2021 | | | $21,000.00 | $25,000.00 |

| 26 | 9/15/2021 | | | $21,000.00 | $25,000.00 |
|----|-----------|--|--|------------|------------|
| 27 | 10/15/2021 | | | $21,000.00 | $25,000.00 |
| 28 | 11/15/2021 | | | $21,000.00 | $25,000.00 |
| 29 | 12/15/2021 | | | $21,000.00 | $25,000.00 |
| 30 | 1/15/2022 | | | $21,000.00 | $25,000.00 |
| 31 | 2/15/2022 | | | $21,000.00 | $25,000.00 |
| 32 | 3/15/2022 | | | $21,000.00 | $25,000.00 |
| 33 | 4/15/2022 | | | $21,000.00 | $25,000.00 |
| 34 | 5/15/2022 | | | $21,000.00 | $25,000.00 |
| 35 | 6/15/2022 | | | $21,000.00 | $25,000.00 |
| 36 | 7/15/2022 | | | $21,000.00 | $25,000.00 |
| 37 | 8/15/2022 | | | $21,000.00 | $25,000.00 |
| 38 | 9/15/2022 | | | $21,000.00 | $25,000.00 |
| 39 | 10/15/2022 | | | $21,000.00 | $25,000.00 |
| 40 | 11/15/2022 | | | $21,000.00 | $25,000.00 |
| 41 | 12/15/2022 | | | $21,000.00 | $25,000.00 |
| 42 | 1/15/2023 | | | $21,000.00 | $25,000.00 |
| 43 | 2/15/2023 | | | $21,000.00 | $25,000.00 |
| 44 | 3/15/2023 | | | $21,000.00 | $25,000.00 |
| 45 | 4/15/2023 | | | $21,000.00 | $25,000.00 |
| 46 | 5/15/2023 | | | $21,000.00 | $25,000.00 |
| 47 | 6/15/2023 | | | $21,000.00 | $25,000.00 |
| 48 | 7/15/2023 | $3,000.00 | 7/6/2023 | $21,000.00 | $25,000.00 |
| 49 | 8/15/2023 | $3,300.00 | 8/10/2023 | $21,000.00 | $25,000.00 |
| 50 | 9/15/2023 | | | $21,000.00 | $25,000.00 |
| 51 | 10/15/2023 | | | $21,000.00 | $25,000.00 |
| 52 | 11/15/2023 | $4,000.00 | 11/27/2023 | $21,000.00 | $25,000.00 |
| 53 | 12/15/2023 | $6,000.00 | 1/2/2024 | $21,000.00 | $25,000.00 |
| 54 | 1/15/2024 | $5,000.00 | 1/8/2024 | $21,000.00 | $25,000.00 |
| 55 | 2/15/2024 | $5,000.00 | 2/20/2024 | $21,000.00 | $25,000.00 |
| 56 | 3/15/2024 | $5,000.00 | 3/11/2024 | $21,000.00 | $25,000.00 |
| 57 | 4/15/2024 | $5,000.00 | 4/19/2024 | $21,000.00 | $25,000.00 |
| 58 | 5/15/2024 | $5,000.00 | 5/17/2024 | $21,000.00 | $25,000.00 |

24

| 59 | 6/15/2024 | $5,000.00 | 6/18/2024 | $21,000.00 | $25,000.00 |
|---|---|---|---|---|---|
| 60 | 7/15/2024 | $5,000.00 | 7/22/2024 | $21,000.00 | $25,000.00 |
| 61 | 8/15/2024 | $5,000.00 | 8/20/2024 | $21,000.00 | $25,000.00 |
| 62 | 9/15/2024 | $5,000.00 | 9/17/2024 | $21,000.00 | $25,000.00 |
| 63 | 10/15/2024 | $5,000.00 | 10/15/2024 | $21,000.00 | $25,000.00 |
| 64 | 11/15/2024 | $5,000.00 | 11/18/2024 | $21,000.00 | $25,000.00 |
| 65 | 12/15/2024 | $3,700.00 | 12/20/2024 | $21,000.00 | $25,000.00 |
| 66 | 1/15/2025 | $5,000.00 | 1/15/2025 | $21,000.00 | $25,000.00 |
| 67 | 2/15/2025 | $3,000.00 | 2/24/2025 | $21,000.00 | $25,000.00 |
| 68 | 3/15/2025 | $5,000.00 | 3/24/2025 | $21,000.00 | $25,000.00 |
| 69 | 4/15/2025 | $5,000.00 | 4/21/2025 | $21,000.00 | $25,000.00 |
| 70 | 5/15/2025 | $5,000.00 | 5/15/2025 | $21,000.00 | $25,000.00 |
|  |  |  |  |  |  |
|  | Total Payments $123,000 | $123,000.00 |  | $1,491,000.00 | $1,775,000.00 |
|  | **Net Arrearage of $1,652,000 at $25,000/month and $1,368,000 at $21,000/month** |  |  | **$1,368,000.00** | **$1,652,000.00** |

6.      Whether Dr. Martinez's post 2012 contributions or roll ins to IRA or other retirement accounts, made after entry of the 2012 Asset Standstill Order, render Defendants' exemption arguments unavailable *ab initio* as to those accounts or those contributed amounts under sections 222.21 and 222.30.

7.      Whether post 2012 contributions or roll ins of funds into IRA or other retirement accounts after the Asset Standstill Order, while Dr. Martinez was in contempt and not paying the court ordered contempt fine, constitute

fraudulent transfers or fraudulent asset conversions under sections 726.105, 726.106, and 222.30.

8.    Whether the PNC joint account titled in the names of Dr. Martinez and Ms. Martinez as husband and wife meets the elements of a tenancy by the entireties account under Florida law and, if so, whether that form of ownership precludes garnishment or other collection by Plaintiff as a judgment creditor.

9.    If the PNC joint account is impervious to garnishment as a tenancy by the entireties account, whether Dr. Martinez's use of that account to receive and hold his wages while in contempt is presumptive evidence that at least $1,343,885.57 in wage deposits were transfers out of Plaintiff's reach in violation of the Asset Standstill Order and in furtherance of a fraudulent transfer and fraudulent asset conversion scheme.

10.   Whether Dr. Martinez's failure to provide Plaintiff with quarterly asset disclosures between August 2020 and August 2021, as required by court order, supports a presumption of fraudulent intent and a presumption of fraudulent intent with respect to transfers made during that period.

11.   Whether, under Florida Statutes section 726.105(1)(a), the challenged transfers were made with "actual intent to hinder, delay, or defraud" Plaintiff, considering the statutory badges of fraud and all relevant circumstances, including prior contempt findings and knowing violations of orders.

12. Whether any transfers are constructively fraudulent under section 726.105(1)(b) because Dr. Martinez did not receive reasonably equivalent value and either (a) intended to incur or reasonably should have believed he would incur debts beyond his ability to pay or (b) engaged in transactions leaving his remaining assets unreasonably small.

13. Whether any transfers are fraudulent as to Plaintiff as a pre-existing creditor under section 726.106(1) because they occurred without reasonably equivalent value while Dr. Martinez was insolvent or rendered him insolvent.

14. Whether any transfer to Kelly Martinez as an "insider" is fraudulent under section 726.106(2) as a transfer for an antecedent debt made while Dr. Martinez was insolvent and Kelly Martinez had reasonable cause to believe he was insolvent.

15. Whether the badges of fraud and history of contempt create a rebuttable presumption of fraudulent intent under section 726.105(2) and applicable case law, and what burden of production or persuasion that places on Defendants.

16. Whether Dr. Martinez's use of Englewood equity, Secoya equity, retirement withdrawals, and the PNC joint account structure constitutes fraudulent asset conversion under section 222.30.

27

17.    Whether any homestead protections limit the remedies available as to the Secoya property or any successor homestead and whether equitable liens or constructive trusts are available in light of the alleged fraud or egregious conduct.

18.    Whether any challenged transfers qualify as "ordinary living expenses" or "ordinary course of business" under the Asset Standstill Order and Florida law.

19.    Whether marital support, sharing of household expenses, or "love and affection" can constitute "reasonably equivalent value" under chapter 726 or section 222.30.

20.    What standard governs insolvency under section 726.103 and how Dr. Martinez's Connecticut obligations are treated in that analysis.

21.    What remedies are available if the Court finds one or more fraudulent transfers or conversions, including avoidance, money judgments, equitable liens, constructive trusts, injunctive relief, and other relief under sections 726.108 and 222.30.

22.    If Ms. Martinez is found to have received fraudulent transfers from Dr. Martinez, or transfers of assets in violation of a court order, the effect of any contemporaneous retirement account contributions by Ms. Martinez while she was receiving the transfers.

23. The method by which the Court can order the sale of the Secoya property with the net proceeds to be paid to Plaintiff.

24. The amount of money the Court can order Defendants, jointly and severally, to pay to Plaintiff on a monthly basis, taking into account their recent income figures which exceed the numbers from 2023.

Defendants' Proposed Issues:

1. Whether any of Plaintiff's causes of action under the Uniform Fraudulent Transfer Act (sections 726.105 and 726.106 of the Florida Statutes) and Plaintiff's cause of action under §222.30, *Florida Statutes* (such claims are set forth below) are precluded, since transfers were made from Dr. Martinez's exempt IRA account, and into a protected homestead under *Havoco*.

2. Whether the PNC joint account is a tenancy by the entireties account.

3. Whether and to what extent Mrs. Martinez gave "new value" to or for the benefit of Dr. Martinez, within the meaning of §726.109(6)(a), *Florida Statutes*, subsequent to any transfer alleged by Plaintiff.

4. If any transfer alleged by Plaintiff was made "in the ordinary course of … financial affairs of Dr. Martinez and Mrs. Martinez, within the meaning of §726.109(6)(b), *Florida Statutes*.

**XIII. PENDING MOTIONS AND OTHER UNRESOLVED ISSUES**

There are no pending motions.

## XIV. SETTLEMENT DISCUSSIONS

The parties have participated in mediation and informal settlement discussions, which did not result in settlement. Plaintiff believes further settlement discussions are unlikely to resolve all issues but remains willing to discuss resolution. Defendants believe that further discussions may or may not be productive, but are also willing to engage in additional discussions if directed by the Court.

## XV. SIGNATURES AND CERTIFICATION

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Respectfully submitted,

CHASE LAW & ASSOCIATES, P.A.

By:  */s/ Kenneth E. Chase*
Kenneth E. Chase
Chase Law & Associates, P.A.
951 Yamato Road, Suite 280
Boca Raton, FL 33431
Tel: (305) 402-9800
Email: kchase@chaselaw.com

*Counsel for Plaintiff D'Anna Welsh*

Respectfully submitted,

ZINNLAW PLLC

By:  */s/ Brian D. Zinn*
Brian D. Zinn
ZinnLaw PLLC
2891 Center Pointe Drive, Suite 304
Fort Myers, FL 33916
Tel: (239) 418-1529
Email: brian@zinn.law

*Counsel for Defendants*
*William V. Martinez, Jr. and*
*Kelly Martinez*

## CERTIFICATE OF SERVICE

I, Kenneth E. Chase, hereby certify that I served the foregoing via CM/ECF, which serves electronic notice to all counsel of record, on April 5, 2026.

By:  */s/ Kenneth E. Chase*
Kenneth E. Chase

31